**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**JANE DOE,**

     Plaintiff

v.

**HOWARD UNIVERSITY,**

    Defendant.

**CASE NO._____**

**Jury Trial Demanded**

## COMPLAINT

COMES NOW the Plaintiff, Jane Doe, by and through counsel, and files this Complaint for damages and alleges as follows:

## JURISDICTION AND PARTIES

1.      Plaintiff Jane Doe is an adult resident of the state of Texas.  At all times relevant hereto, Plaintiff was an adult student at Howard University and was enrolled in the juris doctor program at Howard University School of Law.

2.      Defendant Howard University is an institute of higher education located in the District of Columbia at 2400 6th Street NW, Washington, DC 20059.  At all times relevant hereto, Howard University was a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a).

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(a), and 1367.

4.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) in that the Defendant resides and maintains its principal place of business in this judicial district and a substantial part of the events and omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

5.      On January 7, 2017, Plaintiff was raped and sexually assaulted by Dr. Shawn Eastmond, a Howard University faculty member.  The rape and assault occurred in off-campus student housing where both Plaintiff and Eastmond resided.

6.      At all times relevant hereto, Eastmond was hired, employed, retained, and supervised by Howard University.  At all times relevant hereto, Eastmond was permitted by Howard University to reside in off-campus student housing despite his status as a faculty member.

7.      At all times relevant hereto, Howard failed to adequately, properly, and reasonably hire, employ, retain, and supervise Eastmond, directly and proximately causing damages to Plaintiff which are set forth herein.

8.      The rape and sexual assault by a Howard University faculty member subjected the Plaintiff to a sexually hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*. (hereinafter "Title IX").  This sexually hostile educational environment was so severe, pervasive, and objectively offensive that it interfered with Plaintiff's educational opportunities and benefits.

9.      After promptly reporting the assault to the Howard University Title IX office, Plaintiff experienced acts and omissions by Howard University personnel that violated Title IX as well as Howard University's own Title IX Policy.

10.     Such violations evinced a deliberate indifference to the rights and safety of the Plaintiff.  Such violations created, contributed to, and perpetuated a sexually hostile educational environment that was so severe, pervasive, and objectively offensive so as to interfere with Plaintiff's educational opportunities and benefits.   Such violations constituted continued

2

discrimination, harassment, and retaliation on the basis of sex, causing damages to Plaintiff which are set forth herein.

**A.      The Howard University Title IX Policy**

11.      Title IX is a federal statute prohibiting discrimination, harassment, and retaliation on the basis of sex, applying to colleges and universities—such as Howard University—that receive federal financial assistance.  The statute prohibits a university's deliberate indifference to reports of sexual assault involving students.

12.      Under Title IX, when a university knows or reasonably should know about sexual violence that creates a hostile or unsafe environment, the university must take immediate action to eliminate the sexual violence, prevent its recurrence, and address its effects.

13.      Title IX mandates that, if a student complains of sexual violence or discrimination, the university conduct an adequate and impartial investigation of the complaint.  Both Title IX and the Clery Act, 20 U.S.C. § 1092(f), require that the university inform the complainant of the outcome of any such investigation.

14.      Pursuant to the mandates of Title IX, in 1999 Howard created and enacted a policy titled "Title IX Policy on Prohibited Sexual and Gender-Based Harassment and Violence and Other Forms of Interpersonal Violence" (hereinafter "Title IX Policy").

15.      Under the language of its Title IX Policy, Howard expressly recognizes that "[s]exual and gender-based harassment, discrimination and violence, dating violence, domestic violence and stalking (collectively referred to in this Policy as "Prohibited Conduct") are violations of federal law and District of Columbia, Maryland, and Virginia law."  The Title IX Policy continues: "Therefore, Prohibited Conduct committed by any member of the Howard University community, including students, staff, faculty, administrators, contractors, and third parties, shall

not be tolerated under any circumstance.  Such conduct is strictly prohibited under both Title IX

and Title VII, and by this University policy."

16.     Howard University's Title IX policy applies to reports of Prohibited Conduct in the

following situations:

    a.   The conduct occurs on-campus or on University property;

    b.   The conduct occurs in the context of a University-related or sponsored educational
program or activity, regardless of location (including travel, research, and
internship programs);

    c.   The conduct occurs through the use of University-owned or provided technology
resources; or

    d.   The conduct has a sufficient nexus to the University, such as continuing adverse
effects or the creation or continuation of a hostile environment on campus.

17.     The Howard University Title IX Coordinator "shall oversee the investigation and

resolution of reported misconduct, direct the provision of any remedial and protective measures

(including oversight of the failure to abide by an interim protective measure), and monitor the

administration of any request for review of the finding."

18.     Section X of the Howard Title IX Policy is titled "University Action Upon Receipt

of a Report."  In relevant part, Section X sets out the following:

    a.   Upon receipt of a report of Prohibited conduct, the University will consult with the
Complainant to identify and provide reasonable and appropriate interim measures
designed to preserve the Complainant's educational experience, protect the
Complainant during an investigation, address safety concerns for the broader
University community, maintain the integrity of the investigative and/or resolution
process, and deter retaliation.

    b.   The determination of whether to impose the interim protective measure of interim
suspension or administrative leave will be made by the Title IX Coordinator in
consultation with the Provost and/or an appropriate Cabinet-level administrator. A
Respondent may be suspended on an interim basis when the University has received
information that indicates that the continued presence on campus of the Respondent
will likely have a serious effect on the physical, mental, or emotional health, safety,
or well-being of another person; when physical safety is seriously threatened; or

4

when the ability of the University to carry out its operation is threatened or impaired.

c. At the conclusion of the initial assessment [of the complaint] the University will provide the Complainant with a written summary of the topics discussed during the initial assessment, and will outline the manner in which the matter will proceed.

19.     The Title IX Policy sets out a "Timeframe for Investigation and Resolution." The Policy states that "[t]he Title IX Office endeavors to complete the investigation and resolution process within a reasonable timeframe—approximately 60 calendar days following the notice of the investigation . . . If an investigation or resolution will not be completed within 60 days from the notice of investigation, the University will provide written notice to the parties which will include a statement of the reason(s) necessitating the extension."

20.     The Policy states that "[w]hen the University receives a report alleging a violation of this policy, the Title IX Coordinator will appoint one or more investigators to conduct a prompt, thorough, fair, and impartial investigation."

21.     Under the Title IX Policy, "[a] Title IX Officer will provide the Complainant and the Respondent with a written Notice of Investigation within ten (10) days of receiving a complaint, which includes the following information: (1) the names of the Complainant and the Respondent; (2) the date, time (if known), location, and nature of the reported conduct; (3) the reported policy violation(s); (4) the name of the investigator; (5) information about the parties' respective rights and responsibilities; (6) any interim remedial or protective measures; (7) the prohibition against retaliation; (8) the importance of preserving any potentially relevant evidence in any format; (9) how to challenge participation by the investigator on the basis of a conflict of interest or bias; and (10) a copy of this policy."

22.     According to the Policy, "[d]uring an investigation, the investigator will seek to meet separately with the Complainant, Respondent, and relevant witnesses." Further, "[t]he

5

investigator will also gather other relevant information or evidence, including documents, photographs, communications between the parties, and other records as appropriate."

23.      Howard's Title IX Policy requires the preparation of a "Preliminary Report of Investigation" at the conclusion of the fact-gathering portion of the investigation, and which is "used in determining whether there was a policy violation."  Subsequently, "[t]he Preliminary Report of Investigation and accompanying documents will be made available to the Complainant and the Respondent to review" and each party will be given the opportunity to provide feedback and additional information.

24.      Within seven days of receiving feedback and additional information with respect to the Preliminary Report Investigation, "the investigator will prepare a final Report of Investigation" that "will include a summary of the relevant facts and applicable policy; a determination as to whether there is sufficient information, by a preponderance of the evidence, to support a finding of responsibility for a violation of the policy; the rationale for this finding; if there is a finding of responsibility for a violation of the policy, the sanctions to be imposed; and notification of the available procedures to contest the finding and/or sanction."

25.      After receiving the Final Report of Investigation, each party "may accept or contest the findings or sanctions stated in the Final Report of Investigation" by submitting a written statement to the Title IX Coordinator.  The Provost will then "reach a final determination as to the outcome and sanction within ten days of receipt of the Report of Investigation and the parties' statements."

26.      After the decision is finalized, "both the Complainant and the Respondent will be contacted to schedule an individual Findings Meeting with the Title IX investigator.  During this meeting, each party will receive written notification of the results of the investigation."

**B.      The Rape and Sexual Assault of Plaintiff Jane Doe at UTC Student Apartments**

27.      From approximately August 2014 until June 2017, Plaintiff Jane Doe was a student enrolled in the juris doctor program at the Howard University School of Law.

28.      For the three years she was enrolled at Howard, Plaintiff lived at Vie Towers, f/k/a University Town Center Student Apartments (hereinafter "UTC Student Apartments"), located in Hyattsville, Maryland.

29.      Prior to beginning her first year of law school while searching for available graduate student housing, Plaintiff was directed to UTC Student Apartments by Howard University administrators.

30.      To Plaintiff's knowledge at the time, the resident population at UTC Student Apartments consisted entirely of undergraduate and graduate students at local universities and colleges, including Howard University.

31.      Upon information and belief, at all times relevant hereto, UTC Student Apartments advertised itself as a student housing community.[1] UTC Student Apartments provided its students with common-area study lounges and a free daily shuttle to and from Howard University campus.

32.      At no point did Howard University or its administrators communicate to Plaintiff that it permitted staff and faculty to reside at UTC Student Apartments alongside students.

33.      From August 2014 until late 2016, Plaintiff resided at UTC Student Apartments without incident.  At some point in 2015, Plaintiff met a man in the common-area study lounge named Shawn Eastmond.

34.      Eventually, Eastmond informed Plaintiff that he resided at UTC Student Apartments and that he was a faculty member, lecturer and professor at Howard University.

---

[1] Vie Towers currently advertises itself as "a premier student community" that "gives students full-access to luxury amenities and features."  https://www.vietowers.com/.

35.     Upon information and belief, Howard University hired, employed, and retained Eastmond as a professor/lecturer in the Department of Physics.  At all times relevant hereto, Eastmond was a faculty member of Howard University.

36.     On occasion, Eastmond and Plaintiff saw each other in passing in and around UTC Student Apartments and would engage in friendly conversation.

37.     On January 6, 2017, Eastmond invited Plaintiff to his room at UTC Student Apartments.  In his room, Plaintiff and Eastmond engaged in conversation.  At some point during the evening, Eastmond offered Plaintiff a piece of fruit and a glass of water.

38.     Plaintiff ate the piece of fruit and drank the glass of water provided by Eastmond. Within minutes, Plaintiff began to feel physically unwell.  Eventually, she became dizzy, incapacitated, and unable to move.

39.     At this point, Eastmond physically overtook Plaintiff.  He proceeded to sexually assault and vaginally rape Plaintiff against her will.  Plaintiff was unable to physically move and fight off the assault.  She verbalized her unwillingness to engage in sexual contact with Eastmond; however, Eastmond continued the sexual violence despite Plaintiff's pleading for him to stop.

40.     In the early morning hours of January 7, 2017, after raping Plaintiff more than once, Eastmond physically lifted Plaintiff to her feet and gave her a "Plan B" pill,[2] which he had in ample supply.  He then admonished Plaintiff to remain silent about the assault.  He told Plaintiff that if she attempted to tell anyone what happened, no one would believe her.  He offered money to Plaintiff to remain quiet about the assault.

41.     In a state of shock and panic, and without full physical or mental faculties, Plaintiff left Eastmond's room and walked with great difficulty back to her room.

---

[2] Plan B is an emergency contraceptive.

42.     Later that morning, Eastmond called Plaintiff.  During this conversation, he told Plaintiff that he would pay her a sum of money if she refrained from telling anyone about the sexual assault and rape.  He also requested that, in exchange for the sum of money, Plaintiff come to his room 2-3 times per week to perform sex acts.  Plaintiff declined forcefully and hung up the phone.

43.     Later that day, Plaintiff called the Howard University Violence Prevention Hotline and reported the assault.  The Director of the Howard University Interpersonal Violence Prevision Program, Dr. Akosoa McFadgion, picked Plaintiff up at UTC Student Apartments and took her to Washington Hospital Center.

44.     At Washington Hospital Center, a Sexual Assault Forensic Examination was performed.

45.     After the Examination concluded, Plaintiff was promptly moved, with the assistance of Dr. McFadgion and campus police, to Slowe Hall—a Howard University undergraduate dormitory in Washington, DC—in order to ensure her wellbeing and safety.

46.     On January 8, 2017, Plaintiff filed a police report with the Hyattsville Police Department and gave a formal statement about the rape and assault to law enforcement authorities.

**C.     Howard University's Title IX Investigation**

47.     On or about January 9, 2017 or January 10, 2017, Plaintiff met with Ms. Candi Smiley, who at the time was the Howard University Title IX Coordinator.  Upon information and belief, Ms. Smiley was responsible for ensuring Howard University's compliance with Title IX and the Howard University Title IX Policy, including overseeing the investigation of student reports of sexual assault, harassment, and discrimination. Upon information and belief, Ms. Smiley no longer holds this position with Howard University.

48.     During this meeting with Ms. Smiley, Plaintiff provided Ms. Smiley with a full and detailed report of the assault and rape perpetrated by Eastmond.  Plaintiff also conveyed her desire to terminate her lease at UTC Student Apartments and to find suitable and safe student housing accommodations.

49.     At this time, Ms. Smiley informed Plaintiff that an investigation into her Title IX complaint would be performed and completed and that housing and academic accommodations would be provided.

50.     Soon after the meeting with Ms. Smiley, Plaintiff began seeking counseling and mental health therapy services.  Ultimately, after numerous therapy and counseling sessions, she was found by Howard University mental health professionals to be suffering from post-traumatic symptoms from the assault and rape.

51.     On or about January 27, 2017, Plaintiff met with Dr. McFadgion and Dean Elaine Bourne-Heath (hereinafter "Dean Heath").  At all times relevant hereto, Dean Heath was the Dean of Special Student Services and directed the Howard University Office of Special Student Services.  Among other responsibilities, the Office of Special Student Services was responsible for providing academic and housing accommodations to students determined to have a disability.

52.     The purpose of this meeting was for Plaintiff to receive academic accommodations due to the psychological and mental distress she was experiencing as a result of the rape, and to receive housing accommodations, i.e., permanent placement in an on-campus dormitory with housing fees waived by Howard University.

53.     During the meeting, Plaintiff requested that her professors be notified about her disability, so that her academic standing was not affected negatively.

54.     During the meeting, Plaintiff requested to be permanently moved from Slowe Hall undergraduate dormitory to a graduate dormitory due to noise and lack of suitability for graduate housing.  Dean Heath responded, telling Plaintiff that "beggars can't be choosers" if she wanted Howard to waive housing fees.

55.     During the meeting, Dean Heath demanded that Plaintiff describe in detail the nature and circumstances of the rape and assault in order for Plaintiff to receive requested accommodations.  As Plaintiff uncontrollably cried as she described the assault in painful detail, Dean Health ordered Plaintiff to "suck it up," "get over it," "move on," and to stop crying about being raped.   Dean Heath ordered Plaintiff out of her office as Plaintiff cried profusely.

56.     Plaintiff informed Ms. Smiley promptly about Dean Heath's hurtful, unprofessional, and retaliatory remarks.

57.     On or about January 30, 2017, Plaintiff was informed by her former roommate that Eastmond was still living at UTC Student Apartments and was walking around her former floor. Plaintiff, deeply troubled and frightened by this news, promptly reported this to Dr. McFadgion and Ms. Smiley.

58.     At this time, Plaintiff again requested that she be let out of her lease at UTC Student Apartments, which she was still responsible for paying.  Ms. Smiley proceeded to request that UTC Student Apartments terminate Plaintiff's lease "due to a conflict with another Howard University student who resides in UTC housing."  Despite her knowledge the Eastmond was not a Howard University student, but rather a faculty member who had been credibly accused of raping a student, Ms. Smiley did not identify Eastmond by name or the fact that he was a faculty member at Howard University.

59.     On or about February 1, 2017, Plaintiff secured new housing accommodations and moved to another Howard University residence hall.

60.     For the next several weeks, Plaintiff did not receive any information from Ms. Smiley or any personnel from the Howard Title IX office concerning the investigation into her complaint concerning the January 7th assault and rape.  During this time period, Plaintiff received no information indicating that Eastmond was prohibited from campus, terminated, or that measures were in place to ensure Plaintiff would not encounter him or be subjected to further danger.

61.      On or about March 29, 2017, Plaintiff learned that, despite her requests to secure academic accommodations, Howard University had failed to notify her professors about her disability and resulting absences.  She contacted Dr. McFadgion to seek clarity as to why her professors had not been notified.

62.     On April 4, 2017, almost three months after Plaintiff's Title IX complaint, Plaintiff was contacted by Adrienne Packard, Director of Student Affairs at the Howard University School of Law by email.  Ms. Packard informed Plaintiff that despite receiving the request for accommodations, she "didn't see a specific needed [sic] to share with the faculty"—a decision that "may not have been accurate."

63.     Almost a month later and three-and-a-half months after the rape and assault, on April 21, 2017, Ms. Packard informed Plaintiff that her professors had finally been informed of her disability and the need for academic accommodations.

64.     During the Spring 2017 Final Exam study period, Plaintiff learned that she had a balance due on her Howard University account to cover the cost of her new housing accommodations.  This amount of money threatened to postpone or impede her ability to graduate from Howard University School of Law.  This was surprising and troubling to Plaintiff, as she was

informed by Dean Heath and Dr. McFadgion that the University would waive her housing costs as part of her Title IX accommodations.

65.     Per her request, Plaintiff met with Dr. Anthony Wutoh, Provost and Chief Academic Officer of Howard University to remediate this situation.

66.     On May 8, 2017, Plaintiff sent an email to Danielle Holley-Walker, the Dean of the Howard University School of Law inquiring about the balance due on her account and the fact that it was preventing her from graduating. Plaintiff was informed by Dean Holley-Walker that the balance would finally be removed from her account; five days before her graduation.  On May 13, 2017, Plaintiff graduated from Howard University School of Law.

67.     On June 30, 2017, almost five months after the January 7th rape and assault and subsequent complaint to the Howard University Title IX office, Plaintiff was sent the Notice of Findings by Ms. Smiley.  The Notice of Findings stated that "it has been concluded that the evidence presented is sufficient to sustain a finding of sexual violence in violation of the Title IX policy.  Based on a thorough review of the record, there is sufficient evidence to determine that Dr. Eastmond committed acts [of] sexual violence against you."

68.     The Notice of Findings letter continued: "Dr. Eastmond shall be removed from his lecturer position indefinitely, effective immediately.  Dr. Eastmond shall be barred from the campus and anywhere the University conducts business for one year.  Dr. Eastmond may not return to campus on, and not before, April 28, 2018.  Dr. Eastmond shall be barred from employment at Howard University, effective immediately and indefinitely."

69.     The Notice of Findings letter was signed by Dr. Anthony Wutoh, Provost and Chief Academic Officer of Howard University.

70.     The Notice of Findings letter indicated that the Title IX Investigator was an individual named Marcus A. Winder.  At no time did Plaintiff speak with Mr. Winder or any other Title IX investigator about the January 7th rape and assault nor was she invited to do so, in violation of Howard's Title IX Policy.

71.     At no time did any Howard University personnel, including but not limited to Ms. Smiley and Mr. Winder, meet with Plaintiff to discuss the findings of the Title IX investigation, in violation of Howard's Title IX Policy.

72.     At no time was Plaintiff provided with a final report detailing the investigation into her Title IX complaint, beyond the Notice of Findings, in violation of Howard's Title IX Policy.

73.     At no time during the investigation of her Title IX complaint was Plaintiff provided with notice that the investigation would take more than 60 days to complete, in violation of Howard's Title IX Policy.

74.     At no time during the investigation of her Title IX complaint was Plaintiff provided with a written summary of an initial assessment of her complaint, nor was she notified that an initial assessment had been completed, in violation of Howard's Title IX Policy.

75.     At no time during the investigation of her Title IX complaint was Plaintiff provided with a Preliminary Report of Investigation, in violation of Howard's Title IX Policy.

76.     At no time during  the investigation of her Title IX complaint was Plaintiff provided with a Final Report of Investigation, other than a brief "Notice of Findings" which was a letter from Provost Wutoh totaling slightly more than one page, in violation of Howard's Title IX Policy.

77.     Plaintiff was never given an opportunity to either accept or contest the findings and sanctions resulting from the investigation into her Title IX Complaint, in violation of Howard's Title IX Policy.

78.    Plaintiff was never invited to a Findings Meeting with the Title IX Investigator, Mr. Wilder, in violation of Howard's Title IX Policy.

79.    Howard University's violations of Title IX and its own Title IX Policy demonstrated deliberate indifference to the Plaintiff's report of sexual assault and to her rights and safety.

80.    The acts and omissions of Howard University detailed herein directly and proximately created a sexually hostile environment, caused Plaintiff to suffer academically, barred her access to educational opportunity and benefit, and caused discrimination, harassment, and retaliation on the basis of sex.  The acts and omissions of Howard University detailed herein further proximately caused Plaintiff to suffer severe and permanent damages, including physical, emotional, mental, and psychological pain and suffering; economic damages including medical expenses; personal embarrassment and humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings.

### CAUSES OF ACTION

### COUNT I
### DISCRIMINATION IN VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 (20 U.S.C. § 1681, *et seq*.)

81.    Plaintiff incorporates and realleges all preceding paragraphs of this Complaint as if fully set forth herein.

82.    Plaintiff was raped and sexually assaulted by Shawn Eastmond, a faculty member and lecturer/professor employed by Howard University, at the UTC Student Apartments on January 7, 2017.

83.    The sexual assault and rape suffered by Plaintiff constituted a violation of her right to an educational environment free from sexual discrimination, harassment, and violence under

Title IX, created and perpetuated a hostile environment on campus, and furthermore, was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities and benefits.

84.     Plaintiff exercised her rights under Title IX by reporting the assault and rape to Dr. McFadgion on January 7, 2017 and to Ms. Smiley on January 9, 2017 or January 10, 2017.

85.     On or about January 7, 2017, Howard University had actual knowledge of Plaintiff's complaint of sexual assault, the name of the perpetrator of the assault, and the details and circumstances of the sexual assault.

86.     Despite Howard University's aforesaid knowledge, the university acted with deliberate indifference to Plaintiff's complaint, as well as her rights, wellbeing, and safety in investigating the complaint and providing the Plaintiff with reasonable and adequate accommodations.   Howard University acted with deliberate indifference in numerous ways, including but not limited to the following:

   a.   By allowing Eastmond to remain on campus and as a resident of UTC Student Apartments until at least late-April 2017;

   b.   By retaining Eastmond as a faculty member of Howard University for a period of months after Plaintiff's report, until at least late-April 2017;

   c.   By failing to secure adequate and reasonable academic accommodations for Plaintiff in light of the disability she suffered due to the January 7th rape and assault;

   d.   By failing to secure adequate and reasonable housing accommodations for Plaintiff in light of the disability she suffered due to the January 7th rape and assault;

   e.   By taking more than 60 days to complete an investigation into Plaintiff's Title IX complaint, in violation of Howard's Title IX Policy;

f.   By failing to provide Plaintiff with notice that the investigation would take more than 60 days to complete, in violation of Howard's Title IX Policy;

g.   By failing to give Plaintiff an opportunity to speak with Mr. Winder or any other Title IX investigator about the January 7th rape and assault, in violation of Howard's Title IX Policy;

h.   By failing to give Plaintiff an opportunity to meet with any Howard personnel including but not limited to Ms. Smiley and Mr. Winder, to discuss the findings of the Title IX investigation, in violation of Howard's Title IX Policy;

i.   By failing to provide Plaintiff with a written summary of an initial assessment of her complaint, nor notifying her that an initial assessment had been completed, in violation of Howard's Title IX Policy;

j.   By failing to provide Plaintiff with a Preliminary Report of Investigation, in violation of Howard's Title IX Policy;

k.   By failing to provide Plaintiff with a Final Report of Investigation, other than a "Notice of Findings" summary letter, in violation of Howard's Title IX Policy;

l.   By failing to provide Plaintiff with an opportunity to either accept or contest the findings and sanctions resulting from the investigation into her Title IX Complaint, in violation of Howard's Title IX Policy;

m.  By failing to provide Plaintiff with an opportunity to comment or provide feedback on the investigation results, in violation of Howard's Title IX Policy;

n.   By failing to invite Plaintiff to, nor conduct, a Findings Meeting with the Title IX Investigator, Mr. Winder, in violation of Howard's Title IX Policy;

o.  By disregarding the seriousness of Plaintiff's complaints or otherwise belittling or humiliating her;

p.  By forcing Plaintiff to disclose the details of the January 7th sexual assault and rape inappropriately and without sufficient basis, thereby breaching confidentiality.

87.     The acts and omissions of Howard University set forth above violated Title IX as well as Howard University's own Title IX policy.

88.     The acts and omissions of Howard University set forth above created and perpetuated a sexually hostile environment, directly and proximately caused Plaintiff to suffer academically, barred her access to educational opportunity and benefit, and caused discrimination on the basis of sex.

89.     The acts and omissions of Howard University set forth above directly and proximately caused Plaintiff to suffer severe and permanent damages, including physical, emotional, mental, and psychological pain and suffering; economic damages including medical expenses; personal embarrassment and humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings.

**COUNT II**
**RETALIATION IN VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 (20 U.S.C. § 1681, *et seq*.)**

90.     Plaintiff incorporates and realleges all preceding paragraphs of this Complaint as if fully set forth herein.

91.     Plaintiff was raped and sexually assaulted by Shawn Eastmond, a faculty member and lecturer/professor employed by Howard University, at the UTC Student Apartments on January 7, 2017.

92.     The sexual assault and rape suffered by Plaintiff constituted a violation of her right to an educational environment free from sexual discrimination, harassment, and violence under Title IX, created and perpetuated a hostile environment on campus, and furthermore, was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities and benefits.

93.     Plaintiff exercised her rights under Title IX by reporting this assault and rape to Dr. McFadgion on January 7, 2017 and to Ms. Smiley on January 9, 2017 or January 10, 2017.

94.     On or about January 7, 2017, Howard University had actual knowledge of Plaintiff's complaint of sexual assault, the name of the perpetrator of the assault, and the details and circumstances of the sexual assault.

95.     After receiving notice of Plaintiff's complaint of sexual assault, Howard University retaliated against Plaintiff by failing to provide her with reasonable academic and housing accommodations, and furthermore, by threatening her ability to graduate because of outstanding residential fees caused by the sexual assault and rape.

96.     Howard University further retaliated against Plaintiff when Howard University personnel, including Dean Heath and Ms. Smiley, acted inappropriately, unprofessionally, and in a chastising manner when discussing with Plaintiff the circumstances of her Title IX complaint.

97.     Howard University further retaliated against Plaintiff by allowing Eastmond to remain on campus, as a resident at a student housing facility, and as a member of the Howard University faculty for a period of months after Plaintiff reported the assault and rape, threatening the physical and psychological safety and wellbeing of Plaintiff.

98.     Howard University further retaliated against Plaintiff by failing to adequately, reasonably, or promptly investigate her Title IX complaint and communicate with Plaintiff about

the status and results of her Title IX investigation, in accordance with federal law and their own Title IX Policy.

99.     The acts and omissions of Howard University set forth above violated Title IX as well as Howard University's own Title IX policy.

100.     The acts and omissions of Howard University set forth above created and perpetuated a sexually hostile environment, directly and proximately caused Plaintiff to suffer academically, barred her access to educational opportunity and benefit, and caused discrimination on the basis of sex.

101.     The acts and omissions of Howard University set forth above directly and proximately caused Plaintiff to suffer severe and permanent damages, including physical, emotional, mental, and psychological pain and suffering; economic damages including medical expenses; personal embarrassment and humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings.

## COUNT III
## NEGLIGENCE

102.     Plaintiff incorporates and realleges all preceding paragraphs of this Complaint as if fully set forth herein.

103.     At all times relevant hereto, Howard University had a duty to use reasonable care to ensure that Plaintiff, a Howard University student residing in off-campus student housing, was not subjected to foreseeable harm and danger.

104.     At all times relevant hereto, Howard University had a duty to use reasonable care in the hiring, training, supervision, and retention of faculty members.

105.     At all times relevant hereto, Howard University had a duty to use reasonable care in ensuring that faculty members were not permitted to engage in sexual acts or sexual conduct

20

with students, or put in positions where they could foreseeably engage in sexual acts or sexual conduct with students.

106.    At all times relevant hereto, Eastmond was a faculty member and employee and/or agent of Howard University.

107.    Upon information and belief, Howard University hired and retained Eastmond, despite Howard University's actual or constructive knowledge that Eastmond was unfit, dangerous, and/or otherwise posed a foreseeable threat of harm to students, thereby breaching its duty of reasonable care to students including Plaintiff.

108.    Upon information and belief, Howard University knew or should have known that Eastmond resided at UTC Student Apartments, placing him in a position where he could foreseeably engage in sexual acts or sexual conduct with students, thereby breaching their duty of reasonable care to students including Plaintiff.

109.    Howard University failed to exercise reasonable care in the retention and supervision of Eastmond by permitting him, as a faculty member and lecturer/professor, to reside in UTC Student Apartments and engage in conduct that created a foreseeably safety risk to students.

110.    As a direct and proximate result of the aforementioned breaches, Plaintiff was raped and assaulted by Eastmond, a Howard University faculty member and lecturer/professor, on January 7, 2017.

111.    As a direct and proximate result of the aforementioned breaches, Plaintiff suffered severe and permanent damages, including physical, emotional, mental, and psychological pain and suffering; economic damages including medical expenses; personal embarrassment and

humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

112.    Plaintiff incorporates and realleges all preceding paragraphs of this Complaint as if fully set forth herein.

113.    At all times relevant hereto, Plaintiff was enrolled at Howard University.

114.    As an institute of higher learning, Howard University had a fiduciary relationship with Plaintiff insofar as Plaintiff was reliant on Howard University for her education and an environment in which Plaintiff could pursue her education free from sexual violence, assault, harassment, discrimination, and retaliation from faculty members.

115.    Howard University breached its fiduciary duty to Plaintiff by creating, tolerating, perpetuating, and/or engaging in discrimination, harassment, and retaliation in violation of Title IX, as set forth in the above paragraphs of this Complaint.

116.    Howard University further breached its fiduciary duty to Plaintiff by failing to use reasonable care in the hiring, retention, and supervision of Eastmond, as set forth in the above paragraphs of this Complaint.

117.    As a direct and proximate result of Howard University's aforementioned breach of fiduciary duty to Plaintiff, Plaintiff was raped and assaulted by Eastmond, a Howard University faculty member and lecturer/professor, on January 7, 2017.

118.    As a direct and proximate result of the aforementioned breaches, Plaintiff suffered severe and permanent damages, including physical, emotional, mental, and psychological pain and suffering; economic damages including medical expenses; personal embarrassment and

humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully seeks a judgment against the Defendant, Howard University, and prays for the following relief:

a.  A declaratory judgment that Howard University's policies, practices, and/or procedures challenged herein are unlawful and in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*.;

b.  A permanent injunction against Howard University and its officers, owners, agents, successors, employees, and/or representatives from engaging in conduct that violates Title IX and which creates and perpetuates a sexually hostile educational environment;

c.  Compensatory damages in an amount to be determined at trial for Plaintiff's physical, emotional, mental, and psychological pain and suffering; economic damages including medical expenses; personal embarrassment and humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings;

d.  Punitive damages;

e.  Costs and expenses;

f.  Reasonable attorneys' fees;

g.  Pre-judgment and post-judgment interest; and

h.  Such other relief as this Honorable Court deems just and proper.

Respectfully submitted,

ASHCRAFT & GEREL, LLP

/s/ *Drew LaFramboise*
Drew LaFramboise, Esq. (DC Bar #1018140)
8403 Colesville Rd., Suite 1250
Silver Spring, MD 20910
(301) 770-3737
dlaframboise@ashcraftlaw.com

*Counsel for Plaintiff Jane Doe*

## DEMAND FOR JURY TRIAL

A jury trial is hereby demanded as to all Defendants.

/s/ *Drew LaFramboise*
Drew LaFramboise, Esq.