UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANE DOE,

          Plaintiff,

      v.

HOWARD UNIVERSITY,

          Defendant.

Civil Action No. 20-cv-1769

Chief Judge Beryl A. Howell

## MEMORANDUM AND ORDER

The plaintiff in this action, a former student of Howard University School of Law, has moved to proceed under a pseudonym, Pl.'s Mot. Proceed Under Pseudonym ("Pl.'s Mot.") at 1, ECF No. 2, in her instant action alleging violations of her rights under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*, negligence and a breach of fiduciary duty by the defendant, Howard University. Compl. ¶¶ 81–118, ECF No. 1. For the reasons set forth below, the Court will grant the plaintiff's motion, subject to any further consideration by the United States District Judge to whom this case is randomly assigned.[1]

### I.   BACKGROUND

The plaintiff attended Howard University School of Law from 2014 through 2017. Compl. ¶ 27. Plaintiff asserts that in her search for housing prior to starting law school, Howard University administrators "directed" her to University Town Center Student Apartments ("UTC"). *Id.* ¶ 29. Plaintiff was under the impression that UTC only housed undergraduate and graduate students from local universities. *Id.* ¶ 30. In 2015, plaintiff became aware that at least one Howard University faculty member was also living at UTC.

---

[1] Under Local Civil Rule 40.7(f), the Chief Judge shall "hear and determine . . . motion[s] to seal the address of the plaintiff, and motion[s] to file a pseudonymous complaint." LCvR 40.7(f).

1

*Id.* ¶ 34.  Occasionally, he would engage plaintiff in friendly conversation.  *Id.* ¶ 36.  On January 6, 2017, however, the faculty member invited plaintiff to his room where, plaintiff suggests, he drugged her and, when she was incapacitated, "vaginally rape[d]" her "despite Plaintiff's pleading for him to stop."  *Id.* ¶¶ 37–39.  The next morning, plaintiff's alleged attacker forced her to take an emergency contraceptive pill and offered her money to keep quiet about the rape.  *Id.* ¶ 40.

That same day, plaintiff called Howard University's Violence Prevention Hotline to report the assault.  *Id.* ¶ 43.  A Howard University official picked her up and took her to the hospital.  *Id.*  After plaintiff was examined, the official, with the help of campus police, promptly moved plaintiff out of UTC to "Slowe Hall," a Howard University undergraduate dormitory.  *Id.* ¶¶ 43–45.  Around January 9, 2017, plaintiff contacted Howard University's Title IX coordinator and provided a detailed description of the assault.  *Id.* ¶ 47–48.  She was assured that a Title IX investigation would be initiated and that she would be provided with "housing and academic accommodations."  *Id.* ¶ 49.  According to plaintiff, however, Howard University faculty and administrators were not adequately responsive and were, on occasion, actively hostile to her requests for accommodations.  Plaintiff alleges that, in a meeting with one of the school's deans, her tearful recounting of her assault was met with admonishments to "suck it up," "get over it," and "move on."  *Id.* ¶ 55.  She claims that her efforts to secure adequate and safe housing were also frustrated by inaction and disinterest on the part of Howard University administrators.  *Id.* ¶¶ 54, 58–59.  The same went for her requests for academic accommodations.  *Id.* ¶ 61.  Plaintiff further complains that she was kept out of the loop when it came to the Title IX investigation into the attack.  *Id.* ¶ 60.  Indeed, she alleges that it was not until June 30, 2017, five months after the alleged attack and nearly two months

after plaintiff had graduated, that she was sent a "Notice of Findings" reflecting defendant's conclusion that the "evidence [was] sufficient to sustain a finding of sexual violence in violation of [Howard University's] Title IX policy." *Id*. ¶ 67.  As a result, her alleged attacker was "barred from employment at Howard University . . . indefinitely." *Id*. ¶ 68.

Plaintiff claims that throughout defendant's response to plaintiff's rape, the school violated its own Title IX policy and, in doing so, "created a sexually hostile environment, caused plaintiff to suffer academically, barred her access to educational opportunity and benefit and caused discrimination, harassment, and retaliation on the basis of sex." *Id*. ¶ 80.  She thus filed a four-count complaint in conjunction with the instant motion to proceed under pseudonym.

## II.     LEGAL STANDARD

Generally, a complaint must state the names of the parties and address of the plaintiff. FED. R. CIV. P. 10(a) ("The title of the complaint must name all the parties."); LCvR 5.1(c)(1) ("The first filing by or on behalf of a party shall have in the caption the name and full residence address of the party," and "[f]ailure to provide the address information within 30 days of filing may result in the dismissal of the case against the defendant."); LCvR 11.1 (same requirement as LCvR 5.1(c)(1)).  The Federal Rules thus promote a "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' . . . and, more specifically, from the tradition of open judicial proceedings." *In re Sealed Case*, 931 F.3d 92, 96 (D.C. Cir. 2019) (internal citations omitted) (quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 899 (D.C. Cir. 1996)).  Accordingly, "parties to a lawsuit must typically openly identify themselves in their pleadings," with "[b]asic fairness dictat[ing] that those among the

defendants' accusers who wish to participate . . . as individual party plaintiffs must do so under their real names." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463–64 (D.C. Cir. 1995) (per curiam) (internal quotation marks and citations omitted).

Nevertheless, courts have, in special circumstances, permitted a party to proceed anonymously. The D.C. Circuit has instructed that "the appropriate way to determine whether a litigant may proceed anonymously is to balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure." *In re Sealed Case*, 931 F.3d at 96. When weighing those concerns, five factors, initially drawn from *James v. Jacobson,* 6 F.3d 233, 238 (4th Cir. 1993), serve as "guideposts from which a court ought to begin its analysis." *In re Sealed Case*, 931 F.3d at 97. These five factors are:

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and relatedly, (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* (citing *James*, 6 F.3d at 238).

At the same time, a court must not simply "engage in a wooden exercise of ticking the five boxes." *Id.* Rather, "district courts should take into account other factors relevant to the particular case under consideration." *Id.* (quoting *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008)). In exercising discretion "to grant the rare dispensation of anonymity . . . the court has 'a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted'. . . tak[ing] into account the risk of unfairness to the opposing party, as well the customary and constitutionally-embedded

presumption of openness in judicial proceedings." *Microsoft Corp.*, 56 F.3d at 1464 (quoting *James*, 6 F.3d at 238 (other internal citations and quotation marks omitted)).

## III. DISCUSSION

At this early stage of the litigation, the Court is persuaded that the plaintiff has met her burden of showing that her privacy interests outweigh the public's presumptive and substantial interest in knowing the details of judicial litigation.

In this case, the plaintiff seeks to proceed pseudonymously in order to "preserve privacy in a matter of [a] sensitive and highly personal nature." *In re Sealed Case*, 931 F.3d at 97. Her complaint contains intimate details of her attack and discloses her mental health struggles in its aftermath. Compl. ¶¶ 39–40, 50. The trauma plaintiff has allegedly suffered "has led to severe and persistent emotional and psychological damage[]," and she frets that disclosure of her identity would serve only to "exacerbate those damages, causing additional undue injury." Pl.'s Mem. Supp. Pl.'s Mot. ("Pl.'s Mem.") at 2–3, ECF No. 2-1.

The plaintiff also suggests that "identification poses a risk of retaliatory . . . harm." *In re Sealed Case*, 931 F.3d at 97. She points out that "[a] primary basis of [her] Title IX causes of action against [defendant] is the retaliatory and discriminatory manner in which they investigated and handled her original Title IX complaint." Pl.'s Mem. at 3. Specifically, her complaint details how at least one faculty member "ordered [her] out of [the faculty member's] office" after plaintiff had described her assault. Compl. ¶ 55. Plaintiff's motion, however, does not make clear the nature of the expected retaliation. Plaintiff has graduated and moved away from Washington, D.C., so any retaliation could not be academic in nature. Nor could defendant "investigate[]" her Title IX allegations in a discriminatory manner, as the school's investigation has concluded. Pl.'s Mem. at 3. Plaintiff hints that the retaliation she

fears may be reputational in nature, as the defendant is "the institution from which she received her juris doctorate" and she seems to fret that it may react negatively to any "news media" attention the case may garner. *Id.* Speculation about retaliation arising from press interest, however, is typically insufficient to push the second factor in a movant's favor. *See Roe v. Doe*, No. 18-cv-666 (CKK), 2019 WL 1778053, at *2 (D.D.C. Apr. 23, 2019) (noting that an earlier motion to proceed under a pseudonym had been rejected because "[d]efendant offer[ed] no basis for his assertion that the media will draw significant attention to this case" (internal quotation marks omitted)). Nevertheless, defendant's alleged initial hostility to plaintiff's claims gives some weight to her concern about its reaction to the filing of the instant suit. This factor thus weighs, if only slightly, in favor of allowing plaintiff to proceed under pseudonym.

      As to the nonmoving defendant's interests, the plaintiff's identity is already known to the defendant in connection with its Title IX investigation. Pl.'s Mem. at 3. Allowing the plaintiff to proceed pseudonymously thus will not compromise the defendant's ability to defend this action and poses little "risk of unfairness to the opposing party." *Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008). Finally, any public interest in disclosing the identity of the plaintiff is outweighed, at this stage, by the threat to plaintiff's mental health disclosure of her identity may cause. Moreover, this court has often recognized a countervailing "strong public interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Doe v. Cabrera*, 307 F.R.D. 1, 6 (D.D.C. 2014) (internal quotation marks and alteration omitted) (quoting *Doe v. De Amigos, LLC*, Civ. Action NO. 11-1755 (ABJ), 2012 WL 13047579, *2 (D.D.C. Apr. 30, 2012)). That interest applies with some force in this case.

In sum, weighed against the minimal apparent interest in disclosure, the plaintiff's interest in maintaining her anonymity at this early stage in the litigation is sufficient to overcome any general presumption in favor of open proceedings. *See Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) ("If there is no public interest in the disclosure of certain information, 'something, even a modest privacy interest, outweighs nothing every time.'" (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989))).

## IV.   CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the plaintiff's Motion to Proceed Under Pseudonym is **GRANTED**, subject to any further consideration by the United States District Judge to whom this case is randomly assigned, and the case may proceed using the pseudonym "Jane Doe" for the plaintiff; and it is further

**ORDERED** that the plaintiff's motion and supporting exhibits, including the full name and address of the plaintiff, shall remain under seal until further order of the Court; and it is further

**ORDERED** that the defendant is prohibited from publicly disclosing the plaintiff's identity or any personal identifying information that could lead to the identification of the plaintiff by nonparties, except for the purposes of investigating the allegations contained in the Complaint and for preparing an answer or other dispositive motion in response.

**SO ORDERED.**

Date: July 16, 2020

_____
BERYL A. HOWELL
Chief Judge